CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUN 0 3 2011

BY: JULIA C. DUDLEY, CLERK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

EILEEN BRANIN,

*Plaintiff,*

v.

TMC ENTERPRISES, LLC D/B/A J.D.
BYRIDER, ET AL.,

*Defendants.*

CASE NO. 6:10-cv-00050

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court upon Defendants' Motion to Dismiss, filed on February 17, 2011 (docket no. 10). I have fully considered the arguments and authorities set forth in the parties' filings, as well as those presented at the May 24, 2011 hearing. For the following reasons, I will grant in part and deny in part the motion to dismiss.

### I. BACKGROUND

Plaintiff Eileen Branin brings this action against TMC Enterprises, LLC d/b/a J.D. Byrider ("Byrider") and its employee Lisa Thurman (collectively "Defendants") to recover actual, statutory, and punitive damages for providing false disclosures of mileage of a motor vehicle purchased by Branin. Count I of the first amended complaint alleges violation of the Motor Vehicle Information and Cost Savings Act (the "Federal Odometer Act"), 49 U.S.C. § 32701 *et seq.* Count II alleges violation of the Virginia Consumer Protection Act (the "VCPA"), Virginia Code § 59.1-196 *et seq.* Count III alleges actual fraud under Virginia common law, and Count IV alleges constructive fraud. The Federal Odometer Act claim supplies federal subject matter jurisdiction, and the Court has supplemental jurisdiction over the state law claims.

The facts as alleged in the first amended complaint are the following. Branin is a Lynchburg resident and the purchaser of a used motor vehicle—a 1993 Ford Thunderbird—with a defective odometer. The odometer has not advanced from its register of 147,688 miles since at least March 22, 2006. When Anne Marie Carrington obtained ownership of the car in 2008, the Virginia Department of Motor Vehicles (the "DMV") issued her a title that stated the odometer registered 147,688 as of May 8, 2008. Carrington sold or traded the car on August 26, 2009 to Byrider, a motor vehicle dealer licensed in Virginia. Fast Auto Loans Inc. held a lien on the car and had possession of the title at the time of the sale. "JD Byrider, by its agent and servant Lisa Thurman," had Carrington sign a blank "Power of Attorney to Sign for Owner When Registering and/or Transferring a Motor Vehicle" form, and then Byrider "filled in the other information on the form, falsely representing the mileage of the car as 147,688." (Pl.'s First Am. Compl. ¶ 11.) That same day, before Byrider received the title from Fast Auto Loans, Byrider sold the car to Zac's Auto Sales, a motor vehicle dealer located in Madison Heights, Virginia. As part of that sale, Byrider falsely certified that the odometer register of 147,688 was the actual mileage of the car. The title documentation containing the false mileage certification was supplied to Zac's Auto.

Later that year, Branin purchased the car from Zac's Auto for $3,095. On the buyer's order, Zac's Auto and its employee Zane Cooper represented that the mileage of 147,688 was accurate. Cooper provided Branin with an odometer disclosure statement, on which he falsely certified that the 147,688 odometer reading was the actual mileage of the car. Cooper also represented that his mechanic had "gone over" the car and found it in sound working condition. (Pl.'s First Am. Compl. ¶ 15.) Before transferring the car to Branin, Zac's Auto had it inspected, and the mileage was recorded as 147,688 at that inspection. When Branin took possession of the

car after the inspection, Cooper informed her that the odometer had stopped working on the way back from the inspection station. Branin did not obtain the title and associated paperwork from Zac's Auto until two months after the sale. Branin alleges that the car is worth substantially less than the price she paid for it because of the false odometer reading.

Defendants are moving to dismiss Counts II, III, and IV, which are the state law claims for violation of the VCPA and for actual and constructive fraud.

## II. APPLICABLE LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). In sum, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950.[1]

Fraud claims are subject to a heightened pleading standard. Federal Rule of Civil Procedure 9(b) requires that a party "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The "circumstances" required to be pled with particularity under Rule 9(b) are "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297, at 590 (2d ed. 1990)). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Id.* at 783 n.5.

## III. DISCUSSION

### A. Count II: Virginia Consumer Protection Act

The VCPA was enacted with "the intent of the General Assembly that [it] shall be applied as remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code Ann. § 59.1-197. The VCPA prohibits certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." *Id.* § 59.1-200. A "consumer transaction" is the "advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." *Id.* § 59.1-198. A "supplier" is "a seller, lessor or licensor who

---

[1] In evaluating a motion to dismiss, the court may consider documents extrinsic to the complaint if they are "integral to and explicitly relied on in the complaint" and if there is no dispute as to their authenticity. *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *see also Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 335 (E.D. Va. 2005). Plaintiff asks that the Court consider documentation related to the car's odometer reading, vehicle registration, title, and sale to Plaintiff. As there is no objection, and Plaintiff attached the documents as exhibits to the complaint, I will consider them in evaluating the motion.

advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." *Id.*

Defendants argue that the sale of the car from Byrider to Zac's Auto was not "in connection with a consumer transaction" under the VCPA because the car was sold to another dealer—not a consumer—and was not sold to the dealer to be used for personal, family, or household purposes. In support, Defendants cite cases in which state circuit courts held that the sale of building material to general contractors for use in construction of a residence is not in connection with a consumer transaction under the VCPA. *See In re Chinese Drywall Cases*, 80 Va. Cir. 69, 91-92 (Va. Cir. Ct. 2010) (collecting cases). These cases are distinguishable from the present situation, however, because they involve the sale of building materials as component parts to be used by the general contractor in the construction of a home. *See, e.g., Murray v. Dryvit Sys., Inc.*, No. 01-04-7383, 2002 Va. Cir. LEXIS 420, 2002 WL 32072493 (Va. Cir. Ct. July 15, 2002) (manufacturer's sale to a general contractor of an insulation finish, which was incorporated into a house constructed for the homeowner plaintiff). Here, the car itself, not a component thereof, was sold by one business to another business for resale to a consumer. This case is more like that in *Harris v. Universal Ford, Inc.*, No. 3:00-cv-693, 2001 U.S. Dist. LEXIS 8913, at *3-4, (E.D. Va. Feb. 5, 2001), where the Ford Motor Credit Company ("Ford Credit") sold a vehicle to the Universal Ford car dealership and provided Universal Ford with documentation that did not disclose the true extent of the vehicle's damage. The plaintiffs then purchased the vehicle from Universal Ford, which represented that the vehicle had never been damaged. *Id.* The court determined that the VCPA applied to Ford Credit because it was foreseeable that the car it sold would be resold to consumers. *Id.* at *15-16. *See also Blount v.*

*Greenbrier Pontiac Oldsmobile – GMC Trucks Kia, Inc.*, No. 3:08-cv-622, 2009 U.S. Dist. LEXIS 69117, at *17-18, 2009 WL 2431587 (E.D. Va. Aug. 7, 2009) (denying motion to dismiss VCPA claim against wholesale car dealer, where wholesale dealer allegedly falsified car's mileage, VIN, and title and sold car to retail dealer, which sold it to the plaintiff).

When Byrider sold the car to Zac's Auto, it knew or should have known that the car was likely to be resold to a consumer to be used for personal purposes. The allegedly fraudulent acts only need be "in connection with" a consumer transaction, which encompasses more than direct sales to consumers, as evidenced by the inclusion, in the definition of "supplier," of "a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." *See Merriman v. Auto Excellence, Inc.*, 55 Va. Cir. 330, 331 (Va. Cir. Ct. 2001) (stating that the "language of the statute does not seem to limit protection only to those transactions that occur directly between a supplier and the ultimate consumer" in overruling a demurrer to a VCPA claim against the supplier of a supplier of a retail auto dealership from which the plaintiffs purchased the vehicle). Liberally construing the VCPA because of its remedial nature, I find that the VCPA applies to Byrider's sale of the vehicle.

Although the VCPA applies to the acts of Byrider, it does not reach those of Thurman, the employee of Byrider, because she is not a "supplier" under the VPCA. *See Darden v. Vinton Car Connection, Inc.*, 41 Va. Cir. 465, 467 (Va. Cir. Ct. 1997) (sustaining demurrer as to VCPA action against employees of car dealership because they were not suppliers). Byrider was the owner and the seller of the car, whereas Thurman, as Byrider's office manager, facilitated the transaction. According to the allegations, Thurman was acting for Byrider within the scope of her employment when she allegedly misrepresented the mileage. Thurman was not an officer or

principal of Byrider and had no equity stake in the organization. Under these circumstances, Thurman cannot be categorized as a "seller, lessor or licensor" or as "a manufacturer, distributor or licensor" under the VCPA.

Plaintiff counters that any individual who directly and actively participates in a violation of the VCPA can be held liable. Under Virginia law, individual liability can be imposed on a corporate officer, director, or agent when he or she personally conducts the corporation's affairs in an illegal, criminal manner. *See Crall v. Commonwealth*, 103 Va. 855, 49 S.E. 638, 640 (1905); *Bourgeois v. Commonwealth*, 217 Va. 268, 227 S.E.2d 714, 718 (1976). Plaintiff cites *Stitt v. Nautilus Enterprises, Inc.*, 17 Va. Cir. 150 (Va. Cir. Ct. 1989), in which a court held on a demurrer that an officer or agent of a corporation could be held personally liable for VCPA violations committed by the corporation in which the officer or agent directly participated. *Stitt* extended the reasoning of *Crall* and *Bourgeois* to the VCPA context. *Stitt*, 17 Va. Cir. at 152.

In a similar situation, the Supreme Court of Virginia refused to impose individual liability for a person's active participation in an entity's violations of the Consumer Finance Act ("CFA"), Va. Code Ann. §§ 6.1-244, *et seq.*, a remedial statute which permitted recovery of restitution only from a "lender." *Greenberg v. Commonwealth*, 255 Va. 594, 601, 499 S.E.2d 266, 270 (1998). The Commonwealth sought restitution from a principal of a lending organization that was found to have violated the CFA. It argued that the principal could be personally liable under the CFA because he actively participated in the commission of the illegal conduct. The court rejected this argument, reasoning that it must adhere to the language of the CFA, which provided only that amounts improperly paid to a "lender" were recoverable. *Id.* at 600-01, 499 S.E.2d at 269-70 ("We assume that the legislature chose, with care, the words it used when it enacted the relevant statute, and we are bound by those words.") (quotations

omitted). Further, the court distinguished *Bourgeois* and *Crall*—which apply the active participation theory—on the basis that the statutes at issue in those cases imposed liability on "any person," as opposed to limiting liability to a particular category, such as a "lender." *Id.* at 602, 499 S.E.2d at 270.[2] Although the suit in *Greenberg* was brought under a different statutory scheme, the court's approach is equally appropriate here, where liability under the VCPA is limited to the acts of a "supplier." The active participation theory, even if it were to apply to employees other than corporate officers or directors, does not authorize departure from the meaning expressed by the words of the pertinent statute. *See id.* at 600, 499 S.E.2d at 269. Here, the VCPA plainly and unambiguously does not encompass the acts alleged to be committed by Thurman.

Plaintiff also urges me to follow *Commonwealth v. United Members Loan Association*, No. CH90-1133 (Va. Cir. Ct. Nov. 29, 1990) ("*UMLA*"). There, the court held that Alfred Vizza, the principal of a loan association engaged in a fraudulent loan scheme, could be held personally liable for VCPA violations because he "formulated, directed, controlled and participated in all acts and practices" of the loan association, both before and after the loan association's incorporation. Although few facts are set forth in the *UMLA* opinion, it appears that Vizza personally acted as a "supplier" before the incorporation of the loan association and continued to formulate and direct the association's fraudulent practices after its formation as its principal. Vizza's involvement is markedly different from that of Thurman, who committed no

---

[2] As stated by the court in *Greenberg*, in *Bourgeois*, a corporate officer was found guilty of grand larceny by obtaining money by false pretenses. The statute at issue provided that "if *any person* obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof . . . ." *Bourgeois*, 217 Va. at 269 n.1, 227 S.E.2d at 715 n.1 (emphasis added). Likewise, in *Crall*, the corporation's vice-president was criminally liable under a statute which provided "any peddler who shall peddle for sale, or sell or barter, without a license, shall pay a fine . . . ." *Crall*, 103 Va. at 858, 49 S.E. at 639. The statute defined "peddler" as "*any person* who shall carry from place to place any goods, wares or merchandise, and offer to sell or barter the same, or actually sells or barters the same . . . ." *Id.* at 857, 49 S.E. at 639 (emphasis added).

allegedly fraudulent acts independent of those of Byrider, and who only acted within the scope of her employment as an employee of the dealership. The statutory language, not the active participation theory, governs the instant matter.

## B. Count III: Actual Fraud

A party alleging fraud must prove by clear and convincing evidence (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled. *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005). Plaintiff alleges that Byrider and Thurman, by certifying that the odometer indicated the actual mileage of the car, "made false representations of fact as to the true mileage of the vehicle upon which they knew or should have known that purchasers such as the Plaintiff would rely." (Pl.'s First Am. Compl. ¶ 39.) Defendants argue that they never made any actual representations to Plaintiff upon which Plaintiff could rely. If anything, Defendants maintain that Branin relied on the misrepresentations made by Zac's Auto and Cooper about the car's mileage at the time of the sale to Branin. Plaintiff responds that Byrider misrepresented the mileage with the knowledge that the misrepresentation would be repeated to induce a purchaser into believing the car had less mileage than it actually did.

Plaintiff is correct that Virginia law recognizes a claim of actual fraud under these circumstances. In *Mortarino v. Consultant Engineering Services*, 251 Va. 289, 467 S.E.2d 778 (1996), a firm contracted to purchase real estate which could possibly be subject to governmental wetlands regulations. A "strawman" purchaser employed a consultant to evaluate whether or not the wetlands regulations would apply to this real estate. The consultant erroneously gave an opinion that only a small portion of the real estate would be subject to the wetlands regulations.

The Supreme Court of Virginia held that although the trial court properly sustained the demurrer because the pleadings did not set forth that the consultant "knew or had reason to know" that the purchaser would rely upon the evaluation, the trial court should allow the plaintiff an opportunity to amend the pleadings to make those allegations. *Id.* at 295, 467 S.E.2d at 782.

*Mortarino* has been applied in the context of a chain of sellers of a motor vehicle. In *Eubank v. Ford Motor Credit Co.*, 54 Va. Cir. 170 (Va. Cir. Ct. 2000), Ford Credit sold a Ford Explorer to Amherst Motors, which sold the vehicle to the plaintiffs. In its transaction with Amherst Motors, Ford Credit supplied a report about the prior damage history of the car that contained misrepresentations. Ford Credit did not make any direct misrepresentations to the plaintiffs. The plaintiffs sued Ford Credit for actual and constructive fraud. The court, relying on *Mortarino*, held that the plaintiffs failed to specifically allege that "Ford Credit knew or had reason to know that the ultimate purchasers of this vehicle would rely upon its report about the prior damage history of the vehicle." *Id.* at 171. The plaintiffs amended the pleadings, and on a demurrer to those pleadings, the court found it sufficient to state a claim of fraud that Ford Credit knew or should have known that the condition of the vehicle would be relied upon. *Eubank v. Ford Motor Credit Co.*, 54 Va. Cir. 172 (Va. Cir. Ct. 2001). Similarly, in *Harris*, the purchaser of a vehicle from Universal Ford brought claims for actual and constructive fraud against Ford Credit, the entity that sold the vehicle to Universal Ford with a false damage report. 2001 U.S. Dist. LEXIS 8913, at *3-4. The court rejected Ford Credit's argument that it could not be held liable for fraud without a direct or special relationship with the ultimate purchaser. *Id.* at *10. The claims of fraud against Ford Credit survived the motion to dismiss because "Ford Credit had to know that the vehicle would be subject to resale to 'a reasonable person' and that it made affirmative false statements to promote (and protect) the inevitable transaction." *Id.* The court

added that "[t]o accept Ford Credit's argument would insulate all parties who are one-step-removed from a transaction or activity, but who have to know the possible consequences of their fraudulent actions. Such is not the law in Virginia." *Id.* at \*12. *But see Blount*, 2009 U.S. Dist. LEXIS 69117, at \*19 (dismissing claim of actual fraud against a secondary seller where the consumer relied upon misrepresentations made to him by the ultimate seller of the car, not those made by the dealership that supplied the car to the ultimate seller).

The requirement established in *Mortarino* that a party "knew or had reason to know" that its false representations would be relied upon has been adequately alleged here. As I stated above, assuming the allegations are true, when Byrider sold the car to Zac's Auto, it knew or should have known that the car was likely to be resold to a consumer for personal use and that its false certification of the mileage in the car's title would figure importantly in the resale transaction. Byrider and Thurman's representations enabled Zac's Auto and Cooper to take the position that the odometer's mileage was accurate and that the odometer had only stopped working upon return from the car's inspection.

### C. Count IV: Constructive Fraud

Constructive fraud requires a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation. *Remley*, 270 Va. at 220, 618 S.E.2d at 321. "The essence of constructive fraud is negligent misrepresentation." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559, 507 S.E.2d 344, 347 (1998). Defendants argue that the constructive fraud claim is barred by Virginia's economic loss rule. The economic loss rule has its roots in the common law concept of privity in tort law. Traditionally, under the common law, tort claims sounding in negligence could only be brought

against parties in privity. *Blake Constr. Co. v. Alley*, 233 Va. 31, 34, 353 S.E.2d 724, 726 (1987). The privity requirement was eliminated by statute "where recovery of damages for injury to person, including death, or to property resulting from negligence is sought." Va. Code Ann. § 8.01-223; *Blake Constr.*, 233 Va. at 33-34, 353 S.E.2d at 726. The requirement that there be privity survived, however, for negligence actions that sought solely economic loss. *Blake Constr.*, 233 Va. at 34, 353 S.E.2d at 726 ("There can be no actionable negligence where there is no breach of a duty to take care for the safety of the person or property of another.") (quotations omitted); *Copenhaver v. Rogers*, 238 Va. 361, 366, 384 S.E.2d 593, 595 (1989).

In distinguishing damages solely for economic loss from damages for injuries to persons or property, the Supreme Court of Virginia observed that "[m]ost jurisdictions equate economic losses, for which no action in tort will lie, with disappointed economic expectations." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 421, 374 S.E.2d 55, 56 (1988). This is the prevailing rule where damage is claimed because goods purchased fail to meet some standard of quality. *Id.* Even in the area of products liability, "tort law provides the proper relief for personal injury or property damages resulting from a hazardous product or dangerous occurrence, while relief for loss of bargain or disappointed expectations as to quality of the product lies in contract." *Blake Constr.*, 233 Va. at 35 n.4, 353 S.E.2d at 726 n.4; *id.* at 35, 353 S.E.2d at 726 ("[W]here mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.").

Essentially, Plaintiff claims that she overpaid for the car because of misrepresentations about its quality. She seeks compensation for "the diminished value of the vehicle" and related consequential damages such as "finance charges, insurance costs and property taxes, lost wages

and other damages." (Pl.'s First Am. Compl. ¶ 11.) Her claim is for economic losses, not for personal injury or property damage. In addition, constructive fraud is a tort action based on a negligence theory. *See Va. Beach Rehab Specialists, Inc. v. Augustine Med., Inc.*, 58 Va. Cir. 379 (Va. Cir. Ct. 2002) (barring recovery of economic losses under constructive fraud claim for alleged misrepresentations by a contracting party regarding elements of the contract). No privity exists between Plaintiff and Defendants. Therefore, Plaintiff cannot recover from Defendants in tort for constructive fraud.

Further, the economic loss rule "is intended to preserve the bedrock principle that contract damages be limited to those within the contemplation and control of the parties in framing their agreement." *Richmond v. Madison Mgmt. Group, Inc.*, 918 F.2d 438, 446 (4th Cir. 1990) (quotations omitted). The rule "prevents a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." *Id.* "[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004). When a plaintiff alleges nothing more than disappointed economic expectations in a claim for constructive fraud, the law of contracts, not the law of torts, provides the remedy for such economic losses. *Id.* Here, the quality of the car falls within the scope of the bargain Plaintiff made with Zac's Auto. Although Zac's Auto is not presently a defendant to this suit, the constructive fraud claim must nevertheless be dismissed under the authority of *Filak*.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant in part and deny in part Defendants' motion to dismiss, as follows:

- The motion to dismiss the VCPA claim against Byrider will be denied, but the motion to dismiss the VCPA claim against Thurman will be granted;

- The motion to dismiss the actual fraud claim will be denied; and

- The motion to dismiss the constructive fraud claim will be granted.

An appropriate order will follow. The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this _3rd_ day of June, 2011.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE